IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. BK06-81911 |
| | ) | |
| PHOENIX SYSTEMS & COMPONENTS, INC., | ) | CH. 11 |
| Debtor. | ) | |
| PHOENIX SYSTEMS & COMPONENTS, INC., | ) | ADV. NO. 06-08122 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIRST STATE BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Trial was held in this adversary proceeding in Omaha, Nebraska, on February 22, 2007. Howard T. Duncan appeared for Plaintiff, and Brian D. Nolan and Susan L. Stryker appeared for Defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F) and (H).

The ultimate issue in this proceeding is whether a collateral description of "general intangibles" is sufficient to grant and perfect a security interest in a patent. As discussed below, this Court finds that the collateral description is sufficient and that Plaintiff's avoidance claims should be denied.

### *Findings of Fact*

1. Defendant, First State Bank, has had a lending relationship with Plaintiff, Phoenix Systems & Components, Inc., since April 2003.

2. By virtue of a commercial security agreement dated April 4, 2003, Plaintiff granted to First State Bank a security interest in the following collateral: "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles."

3. The same collateral description was used in subsequent commercial security agreements granted by Plaintiff to First State Bank dated July 9, 2004, and June 28, 2006.

4. The collateral description in the June 28, 2006, commercial security agreement also had other collateral descriptions, including "A PATENT ON CONCRETE FORMING SYSTEM WITH BRACE TIES, U.S. LETTERS PATENT NO. 6,378,260 ISSUED APRIL 30, 2002, DOCKET 2751" ("Patent").

5. At or about the time it obtained the foregoing commercial security agreements, First State Bank also filed UCC financing statements containing descriptions identical to those found in the commercial security agreements referenced above.

6. In addition to the filing of financing statements with the Nebraska Secretary of State, First State Bank caused to be filed with the United States Patent and Trademark Office on August 24, 2006, a notice of assignment of the Patent, stating that the nature of the conveyance was a security agreement.

7. At or around the time the June 28, 2006, security agreement was signed, Plaintiff liquidated some real estate that also served as collateral for the indebtedness due to First State Bank, and paid the proceeds of approximately $200,000.00 to First State Bank. At that same time, First State Bank liquidated a certificate of deposit in the amount of approximately $250,000.00, which also stood as collateral for Plaintiff's indebtedness.

8. At or about the time the June 28, 2006, security agreement was executed, First State Bank granted extensions of credit to Plaintiff by authorizing funds to be used for payment of an accountant's invoice and by providing approximately $20,000.00 of operating capital for payroll purposes.

9. Within "a couple of weeks" of executing the June 28, 2006, security agreement, Plaintiff was unable to make further payroll and all employees were let go. Since that time, except for the efforts of the two remaining officers of Plaintiff to obtain new capital for the business, Plaintiff has ceased business operations.

10. On November 21, 2006, Plaintiff filed for protection under Chapter 11 of the United States Bankruptcy Code, Case No. BK06-81911.

11. Plaintiff is indebted to First State Bank under two promissory notes. Under one promissory note, there is presently due from Plaintiff the sum of $171,116.61 and, under a second promissory note, the sum of $263,692.70 is due.

### *Discussion*

Plaintiff filed this proceeding seeking to set aside the lien of First State Bank in the Patent as a preferential transfer under 11 U.S.C. § 547 or, alternatively, as a fraudulent conveyance under 11 U.S.C. § 548. Plaintiff's position is that First State Bank did not obtain a lien on the Patent until it was granted by the June 28, 2006, security agreement, which was perfected by an amendment to

a financing statement filed June 29, 2006, which added a specific description of the Patent to the description of collateral. Plaintiff's position is that the Patent is a special item of collateral that must be specifically identified in the security agreement and UCC filing in order to be effective. First State Bank argues that it has held a perfected lien on the Patent since April 2003 as a result of the commercial security agreement it obtained when it first loaned money to Plaintiff and its corresponding UCC filing, both of which identified "general intangibles" as an item of collateral. At trial, Plaintiff acknowledged that its efforts to set aside First State Bank's lien on the Patent will fail if a collateral description of "general intangibles" is sufficient to transfer and perfect a lien on a patent.

The parties agree that the Uniform Commercial Code in the State of Nebraska, not federal patent law, controls the manner of granting and perfecting a security interest in a patent. *See In re Cybernetic Services, Inc.*, 252 F.3d 1039 (9th Cir. 2001). In that case, the Ninth Circuit Court of Appeals carefully considered whether federal patent law preempted state UCC laws as well as whether the UCC deferred to federal patent law. After an extensive analysis, the court concluded that state UCC law governed perfection of a security interest in a patent. *Id.* at 1059.

Until July 1, 2001, the definition of "general intangibles" as used in the Nebraska Uniform Commercial Code was found in Section 9-106, which provided that "'[g]eneral intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, investment property, and money." The Official Comment to that section provided:

> The term "general intangibles" brings under this article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. Other examples are copyrights, trademarks and patents * * *.

Effective July 1, 2001, Article 9 of the Uniform Commercial Code was substantially revised. The definition of general intangibles was incorporated into a new Section 9-102 containing other definitions. The new definition is similar to the old definition in that it provides "'[g]eneral intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software." The Official Comment to that definition now provides:

> "General intangible" is the residual category of personal property, including things in action, that is not included in the other defined types of collateral. Examples are various categories of intellectual property * * *. As used in the definition of "general intangible," "things in action" includes rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement.

Clearly, prior to 2001, patents were expressly included under the definition of general intangibles. The 2001 amendment did not substantially alter the definition of general intangibles and the 2001 Official Comment provides that various categories of intellectual property are examples of general intangibles.

In the case of *In re Topsy's Shoppes, Inc. of Kansas*, 131 B.R. 886 (D. Kan. 1991), the United States District Court for the District of Kansas affirmed a bankruptcy court finding that a collateral description of "general intangibles" was sufficient to cover the debtor's intellectual property and the proceeds therefrom. Specifically, the court found that "every case addressing the same or similar issues has concluded that such items are normally encompassed within the term 'general intangibles.'" *Id.* at 888 citing *In re Lady Madonna Industries, Inc.*, 99 B.R. 536, 539 (S.D.N.Y.1989) (noting that trademarks and trade names are considered general intangibles); *In re Emergency Beacon Corp.*, 23 U.C.C.Rep.Serv. 766 (Bankr. S.D.N.Y.1977) (holding that a debtor's patent rights and tradename were general intangibles within the meaning of UCC § 9-106); *In re Protest of Strayer*, 239 Kan. 136, 142, 716 P.2d 588 (1986) (noting that the term "general intangibles" includes patent rights and trademarks).

The *Cybernetics* case from the Ninth Circuit involved facts similar to this case. A party holding a security interest in a patent was seeking relief from stay to foreclose on the patent, which was the primary asset of the bankruptcy case. The trustee opposed the motion, asserting that the creditors had failed to perfect their interest by filing with the federal Patent and Trademark Office. As discussed previously, the Ninth Circuit determined that state UCC law governed the attachment and perfection of a security interest in a patent. 252 F.3d at 1059. As a result, the collateral description of "general intangibles" was sufficient to perfect a lien on a patent. *Id.*[1]

Based on the foregoing, this Court finds that patent rights are encompassed within the definition of general intangibles under the Uniform Commercial Code as enacted in the State of Nebraska. A specific description of the patent is not needed in order to create or perfect a security interest. It is undisputed that Plaintiff granted to First State Bank a security interest in general intangibles in April 2003, which security interest was perfected by filing at that time. Since First State Bank has had a security interest in the Patent since 2003, Plaintiff's effort to set aside the lien as a preference or fraudulent transfer must fail. Specifically, preferences under 11 U.S.C. § 547 pertain to transfers occurring within 90 days (or one year in the case of insiders) of the date of bankruptcy filing, and fraudulent transfers under 11 U.S.C. § 548 pertain to transfers occurring within two years prior to the date of filing. The transfer of the lien on the Patent to First State Bank, occurring in 2003, was well outside of the applicable time frame for either a preference or fraudulent transfer. Therefore, Plaintiff's avoidance claims set forth in its Complaint are denied and the Complaint should be dismissed.

---

[1] Although the Court of Appeals' opinion does not clearly state that the patent was not specifically described, the lower court's decision makes it clear that the collateral description involved only "general intangibles." *In re Cybernetic Services, Inc.*, 239 B.R. 917, 918 (9th Cir. B.A.P. 1999).

Separate judgment to be filed.

DATED: February 23, 2007.

BY THE COURT:

 /s/ Thomas L. Saladino 
United States Bankruptcy Judge

Notice given by the Court to:
    Howard T. Duncan
    Brian D. Nolan
    U.S. Trustee